FULTS *v.* PAUL *et al.*

(*Supreme Court, General Term, Fifth Department.* March, 1892.)

FRAUDULENT CONVEYANCES—KNOWLEDGE OF GRANTEE.

In an action by a creditor to subject to his claim land which had been conveyed by the debtor to his son F., and by F. to defendant, it was found that the first deed was intended by the parties thereto to defraud plaintiff. Defendant testified on his direct examination that there were 42 acres of the land, worth $20 per acre; that he paid F. "so much," and was to take care of F.'s father during F.'s absence from home. On cross-examination he testified that he was informed when he took the deed that there were 40 acres; that he agreed to pay F. $1,000, and pay his father the rest; that no time was specified for his taking care of F.'s father; that he did not know how much the land would come to at $20 per acre; that he did not agree to give $20 per acre, but it was worth that; that he did not agree to give $1,800, but $1,200 to $1,300 in all; that F. owed him $500, and he gave F. his note for $500. He testified on his examination in supplementary proceedings that he never saw F.'s deed, and knew nothing about it, except what F. told him; that he paid in the neighborhood of $2,000 for the farm; that he paid F. $1,000, all in cash, except what F. owed him, which was about $300; that he agreed to pay $1,800; that, when he bought the place, he gave F. a note for $500, due in five years, and $200 in money; that the note was not paid; that he knew that F.'s father and mother had a life lease; that, before he bought it, he had heard of the indebtedness to plaintiff. *Held,* that the evidence was too contradictory to support the finding that defendant purchased in good faith.

Appeal from judgment on report of referee.

Action to set aside two deeds, by Henry N. Fults against Wilbur Paul, administrator of Erwin Paul, deceased, and others. From a judgment entered in Steuben county on the report of a referee, dismissing the complaint as to defendant Wilbur Paul, plaintiff appeals. Reversed.

For former reports, see 14 N. Y. Supp. 4; 17 N. Y. Supp. 604, *mem.*

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*J. F. Dorthy,* for appellant. *J. W. Dininny,* for respondents.

DWIGHT, P. J. The action was a creditors' bill to reach real estate, consisting of a small farm, conveyed by the defendant George Paul to the defend-

ant Frank Paul, his son, and by the latter to Erwin Paul, the brother of George. Erwin Paul was made a defendant in the action, and answered as such, but died after the evidence was taken and pending the decision of the referee; and Wilbur Paul, as his administrator, was substituted for him as defendant. The referee found that the deed from George to Frank was given and accepted with intent to hinder, delay, and defraud the creditors of the former,—particularly the plaintiff,—and was void as to the plaintiff, but that the deed from Frank to Erwin.Paul was accepted by the latter in good faith, and for a valuable consideration paid by him, and without any intent to hinder, delay, or defraud the plaintiff or any creditor of George Paul, and without any notice or knowledge of any fraudulent intent on the part of Frank or George Paul, or of any fraud rendering the title of Frank Paul void. Judgment was directed and entered accordingly, adjudging the deed from George to Frank fraudulent and void as to the plaintiff, but dismissing the complaint as to the defendant Wilbur Paul, as administrator, etc.

We are not satisfied with the findings, nor with the disposition of the case, in the respect last mentioned. The deed from George to Frank being fraudulent and void, it became necessary for Erwin, in order to maintain his title as the grantee of Frank, to show affirmatively and by satisfactory evidence that he was, himself, not only a purchaser in good faith, without fraudulent intent on his own part, and without notice of the fraudulent character of the title of his grantor, but also for a valuable and sufficient consideration, actually paid or parted with by him on the faith of the apparent title of his grantor, and before he had notice of the fraudulent character of that title. An examination of the record before us leads to the conclusion that the findings of the referee in the respect last mentioned are not supported by the evidence, and that the exceptions of the plaintiff to those findings, and to the refusal of the referee to find in that respect as requested by the plaintiff, were well taken. The case on the part of Erwin Paul rests upon his own testimony, a part of which was given on the trial of the action, and a part in proceedings supplementary to execution, taken by the plaintiff. This testimony thus presented is full of inconsistencies, contradictions, and evasions, and is very unsatisfactory, especially on the question of consideration for the deed to him. On his direct examination in the trial of the action, he testified that there were 42 acres in the farm, and that it was worth $20 per acre, and that he paid Frank "so much," and was to take care of his father till he came back. On his cross-examination he testified that the farm was worth no more than $20 an acre; that he was informed there were 40 acres in it when he took the deed; that he agreed to pay Frank $1,000, and to pay George the rest; that he was to take care of George till Frank came back,—no time specified; that that was the consideration of the deed; that he thought the price was fixed at $20 per acre; that he had not figured up how much the farm would come to at $20 an acre; that he did not agree to give $20 an acre,—when he bought it, he considered it worth $20 an acre; that he was to pay Frank $1,000, and take care of his father until he came back; that he did not agree to give $1,800, but $1,200 to $1,300 in all. And on his redirect examination he testified that Frank owed him $500, and he gave Frank a note of $500. On his examination in supplementary proceedings, he testified that he never saw Frank's deed, and knew nothing about his having a deed, except what Frank told him; that he paid in the neighborhood of $2,000 for the farm; that he paid Frank $1,000, all in cash, except what Frank owed him; that he did not remember exactly how much Frank owed him; that it was about $300, and he paid $700 in cash; that he paid Frank that sum before he went off; that he was to pay the balance to George as he wanted it, along; that he agreed to pay $1,800 for the farm, provided he should pay George as he needed; that he considered the farm worth $1,800, —what he gave for it; that he gave Frank a note when he bought the place

for about $500, due in five years, and $200 in money; that the $500 note had not been paid; that he heard before he took the deed that Frank had given a life lease to his father and mother; that he furnished provisions and support for George Paul and his family in this way,—he rented the farm on shares, and George was to have his (Erwin's) share to live on. He also testified that he had heard that George was indebted to the plaintiff before he bought the farm; that he heard that George indorsed the note to Fults about the time he took the deed; that he knew they got a horse from Fults, and turned out the McTamery note for it. This was the note on which the plaintiff recovered a judgment, which is the basis of this action. There is but little more of the testimony of Erwin Paul which is at all material to this action, and none which relieves it, as a whole, from the effect of the apparent contradiction and prevarication which characterizes that recited above. It is unnecessary to argue that testimony of this character does not support the affirmative of the issue of good faith and full consideration, which was laid upon Erwin Paul as the grantee of a title which was void in the hands of his grantor. The judgment must be reversed, and a new trial granted. So ordered, with costs to abide the final award of costs. All concur.